Good morning, Your Honor. Good morning, counsel. May it please the Court. I'm David Shomly. I'm the attorney for the Park family. The facts in this case before Judge Hubel were not contested. They're not contested at this point. The issue at hand is whether or not the Secretary of State has the power under 8 U.S.C. subsection 1153G to revoke and destroy a visa petition. When we look at the statute, the only language that talks about the power of the Secretary of State vis-à-vis a visa petition is it says, the Secretary of State shall terminate the registration of any Indian who fails to apply for an immigrant visa within one year. There's absolutely no language about a revocation or destruction of a visa petition. Let me focus on something to try to clarify this, because I'm not totally sure I understand where you're coming from. If I get it right, you say you agree that registration can be accomplished by some means in addition to filing of a DS-230, right? It is my contention that there was no registration in this case. However, there are other means of doing so, Your Honor. Okay, there are other means to do it, and if upon failure to apply for an immigrant visa after having been given notice that an immigrant visa number is available, the Secretary of State can indeed, is supposed to, terminate the registration. Yes. Then what difference does, there's nothing left, there's no utility to just storing a useless I-130 form, is there? Well, Your Honor, it's not just, perhaps it's the definition of what termination really means in this case. Because, for example, for the Park family, at the time the visa number became available, they did not register, they did not intend to immigrate to the United States from Korea. Right. But when they came here, they filed their proper documents relying on the approved I-130, because the relationship still existed, the brothers were still alive. Yeah, but they lost their place in line. Right. They could have redone this whole thing, but they lost their place in line by not doing what the notice said to do, which is go file within a year. Go ahead. No, I was just going to say, your view seems to be that once the I-130 is approved, it lasts indefinitely. It lasts until the relationship of the parties change, unless there's a divorce. Well, it lasts indefinitely, and that's not what's contemplated by the statutory scheme. But that's not what subsection G says. You're on. In fact, when we look at it, if we look at what- Once the I-130 was approved for the brother, and then the brother was given notice that he could apply for the visa, the way I read that statute simply was that he was deemed registered. Yeah. Essentially deemed registered at that point. He had one year to apply. In fact, I think if I'm reading this, he got an extra year to apply, and he chose- Well, you have a year to apply, and if you don't apply within a year- Special circumstance. Right, special. So he had that period of chunk of time, and he never applied. And so, as Judge Reimer just said, he lost his place in line. There are millions of people around the world who want to come here, and they're waiting for these numbers to become available. And it seems reasonable that if you don't, for the Secretary and for Congress to set up this scheme, that if you don't get that visa within the time that's allotted, you know, on to the next. There are people in line. But even if we're to take that scenario, and we look at the regulations that the Secretary is supposed to follow, they're supposed to notify the petitioner. They were supposed to notify Mr. Park in the United States that the petition that he had filed had been revoked. That never happened. Perhaps had that happened, that would have triggered a notice to the petitioner, Your Honor. We can look at, if we look at- I don't recall that particular argument. I don't remember seeing an argument specifically that they failed to notify Mr. Park, the one who filed the application in the United States, that the brother had not applied. Well, that's just part of the regulatory scheme, Your Honor. But I don't recall seeing you make that argument here as a basis for saying what the Secretary did was invalid. It is part of the factual basis in this case, Judge. I don't recall a legal argument along those lines. Well, we had made the argument that it was a do-gooder. I understood all along that the brother, Park, in Korea, well knew he had been notified that he had a certain period of time within which to apply for his visa, and he never did. And that there's no dispute as to that. The dispute is when he did apply for adjustment of status, it was the former INS or CIS that notified him that the petition the brother had filed had, in fact, been revoked and destroyed. So that was the basis they denied the 45 order for the application to adjust status. Since they were in the United States, it is our contention that it is different. Is that – are you saying that that makes a difference, that they came over here and because they were physically here, that that matters? I just don't – I mean, I'm just having trouble following the chain. If the petition had not been revoked or destroyed, it would have remained valid. Well, sure. If he had applied within a year, he would have been here legally also. But at that time, he denied it. I mean, there are lots of ifs, ifs, ifs, but the point is he didn't, and therefore, it expired. That's all. It just wasn't worth a piece of paper to blow it up with anymore, was it? Well, I think – well, I think the statute does not say that that visa goes away, that is revoked and destroyed, Your Honor. Yes, you lose your place in line if you intend to immigrate to the United States from abroad, but this was not the situation here. They were, in fact, in the United States, applying for a status on an approved I-130 or what they believed to be an approved I-130. It had been revoked. The approval had been revoked. And that was contemplated by the statute. The statute does not say that they can revoke or destroy the application. They do say there's a termination of registration. Let me ask you this. Is it – if instead of – I don't know what they did with it. Instead of tearing it up, they had put it in a beacons box and stored it someplace in Maryland. Would that have made a difference? Your Honor. I don't think so. Because it's just not worth anything. The physical – I understand your question. It's not the physical destruction of the actual document. It is that Secretary of State also revoked the I-130 that was approved by CIS in 1987. That is really the issue. Does the Secretary of State have the authority to revoke what was approved by CIS or former INS back in 1987? So I do understand that physically maintaining that file creates problems. Because if you can't prove there was ever a petition since it's been destroyed, it may be a difficulty for the Park family to prove that there was once an approval for an I-130. But it really – the issue is whether or not there is authority to revoke that petition that was granted by CIS, Judge. Yeah. And when the reader of the statute just doesn't support that. I mean, if the statute says you lose your line, you lose your place in the line to get an immigrant visa, is that the same as the original petition is completely revoked? And our position is it does not. That you may lose your place in line to immigrate to the United States, but the Secretary of State does not have the authority to completely revoke that approved I-130 application. Okay. I have nothing further. Thank you. Okay. Ms. Essman. May it please the Court, Mr. Shomlu. I'm Kelly Zusman, appearing on behalf of the United States today. I want to first respond to the Court's question regarding notice. There was no issue at the district court that the parks were given adequate notice. In 1997, they received a letter from the State Department explaining the steps to obtain their visa. In May of 98, the State Department wrote to them again saying we've received no response and notifying them that their immigrant visa application would be terminated within a year. Again, in May of 99, the State Department wrote to the parks and said your application has been canceled and any petition for you has been canceled. In May of 2000, the State Department again wrote to them and said that their application had been canceled and any approved petition would be returned. In May of 2001 is when they finally destroyed the petition itself. Now, Judge Hubel, I think, did a very nice job of analyzing the legislative history to 1153G. To my knowledge, and I checked again this morning before coming over here, Judge Hubel's decision is the only one that I'm aware of that's been published that interprets this particular statute. And what Judge Hubel did was he said 1153G says that the Secretary shall terminate registration. That's precisely what happened here. The Secretary followed all of the steps to provide them with a notice about what was going to happen. And to the extent that the statute doesn't cover this, the regulations that were implemented by both the State Department and the Immigration and Naturalization Service reasonably extend termination of the registration to termination and automatic revocation of that petition. It's consistent with the legislative history that, as the Court mentioned earlier, there are a limited number of visas out there. And what Congress wanted was that if someone was notified that they had a visa and they didn't want to use it and they didn't want to take advantage of that, that then they be pulled off the track so that visas could then be made available to people who wanted to emigrate to the United States, precisely what happened here. I would urge the Court to affirm on the basis stated by Judge Hubel. And unless the Court has any further questions, I will submit. Thank you. I don't think so. Shall we move? All right. Thank you both for your argument. And the matter just argued will be submitted. And the Court will stand in recess. Good morning. Thank you. Thank you.
judges: Rymer, Nelson, Paez